UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARISA HOLMES,                                )
                                              )
                          Plaintiff,          )        **AMENDED COMPLAINT**
                                              )
            -against-                         )        **JURY TRIAL DEMANDED**
                                              )
THE CITY OF NEW YORK; POLICE                  )        **14 Civ. 5253 (LTS)**
DETECTIVE KENNETH ODONNELL, Shield No.        )
7432; POLICE DEPUTY INSPECTOR                 )
ANTHONY BOLOGNA; POLICE OFFICER               )
FERNANDO CENTENOTALAVERA, Shield No.          )
21642; JOHN DOES; and RICHARD ROES,           )
                                              )
                          Defendants.         )
-------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff MARISA HOLMES seeks relief

for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C.

Section 1983, by the United States Constitution, including its First, Fourth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York.  Plaintiff seeks

damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and

attorneys' fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is

conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this

being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

1

## JURY TRIAL DEMANDED

3.      Plaintiff demands a trial by jury on each and every one of his claims as pleaded

herein.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

5.      Plaintiff MARISA HOLMES was at all times relevant herein a resident of the State

of New York.

6.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a

municipal entity created and authorized under the laws of the State of New York.  It is authorized

by law to maintain a police department, which acts as its agent in the area of law enforcement and

for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks

incidental to the maintenance of a police force and the employment of police officers as said risk

attaches to the public consumers of the services provided by the New York City Police

Department.

7.      Defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY

INSPECTOR ANTHONY BOLOGNA, POLICE OFFICER FERNANDO

CENTENOTALAVERA, and JOHN DOES, are and were at all times relevant herein duly

appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK

and/or the New York City Police Department (NYPD), a municipal agency of defendant THE

CITY OF NEW YORK.  Defendants are and were at all times relevant herein acting under color

2

of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, POLICE OFFICER FERNANDO CENTENOTALAVERA, and JOHN DOES are sued individually and in their official capacity.

8.      Defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of subordinate members of the police department under their command.  Defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA, and RICHARD ROES are sued individually and in their official capacity.

3

## STATEMENT OF FACTS

9.     On September 24, 2011, approximately 12:48 p.m., Plaintiff was in the vicinity of the front of 1 Chase Manhattan Plaza, New York, NY.

10.     Plaintiff is a documentary film-maker and journalist, who was an active participant in the Occupy Wall Street (OWS) movement, and was filming an OWS demonstration occurring at that location.

11.     A man was kneeling down in the roadway, and giving an oration condemning Chase bank.

12.     Numerous members of the NYPD were also in the roadway, as well as numerous members of the public and journalists, including Plaintiff, who were watching and filming and / or photographing what was taking place.

13.     The members of the NYPD for a period of time said nothing to ask any members of the public or journalists to get out of the roadway.

14.      A member of the NYPD whose identity is presently unknown asked Plaintiff to back up a short distance in the roadway, and Plaintiff did so.

15.     That member of the NYPD thanked Plaintiff for cooperatively complying with his request.

16.     After a period of time, Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA - on information and belief the ranking officer at the scene - decided to arrest the individual who was kneeling in the roadway, and grabbed that individual's wrist and ordered that he be arrested.

17.     Defendant DETECTIVE KENNETH ODONNELL at that point came directly

4

over to Plaintiff specifically and, focusing on her, told her, just as the arrest of this individual was commencing that she was trying to film, that she now - at that critical journalistic juncture - had to get out of the street and "get out of the street means get out of the street, it doesn't mean just ignore me and keep [filming] … you're on a public street, alright."

18.     Defendant DETECTIVE KENNETH ODONNELL put up his hands to block Plaintiff's video-camera and interfere with her attempt to film the arrest of the man who had been kneeling in the roadway.

19.     Plaintiff attempted to film this individual's arrest, and was following members of the NYPD as they brought the arrested individual from the roadway over to the sidewalk.

20.     Defendant DETECTIVE KENNETH ODONNELL told Plaintiff – as she approached the sidewalk, filming the NYPD officers who were removing the arrested individual from the scene - to leave the roadway and asked her if she wanted to be arrested, and further interfered with her attempt to film the man being arrested.

21.     Defendant DETECTIVE KENNETH ODONNELL singled Plaintiff out because she was known to him – on information and belief either from his personal observations or from intelligence gathered by the NYPD, including its Intelligence Division – to be an active participant in the Occupy Wall Street (OWS) movement.

22.     Defendant DETECTIVE KENNETH ODONNELL let slip that he knew precisely who Plaintiff was by inadvertently calling her by her first name, "Marissa," when he was addressing her.

23.     Defendant DETECTIVE KENNETH ODONNELL, with the assistance of POLICE OFFICER FERNANDO CENTENOTALAVERA, grabbed Plaintiff and placed her

under arrest.

24.      Plaintiff, when she was arrested, was in the process of leaving the roadway and going onto the sidewalk.

25.      Plaintiff was arrested a very short distance from the sidewalk, as she headed toward the sidewalk.

26.      Defendant DETECTIVE KENNETH ODONNELL, with the assistance of a POLICE OFFICER FERNANDO CENTENOTALAVERA, took Plaintiff roughly down to the ground, causing her to land on top of her large equipment bag.

27.      Defendant DETECTIVE KENNETH ODONNELL, with the assistance of the POLICE OFFICER FERNANDO CENTENOTALAVERA, picked Plaintiff back up again.

28.      Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA assisted DETECTIVE KENNETH ODONNELL and POLICE OFFICER FERNANDO CENTENOTALAVERA to place Plaintiff in handcuffs – which were applied with an excessive and punitive tightness – and to walk her in custody farther down the street, and place her in a police car.

29.      Plaintiff complained about the excessive and painful tightness of her handcuffs, but Defendants did nothing to loosen them.

30.      As Plaintiff was being placed in the police car, a witness can be heard stating, "she never resisted, we have it on camera."

31.      Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA, at his deposition in Elliott, et al. v. City of NY, et al., 12 Civ. 992 (RWS) (MHD) - and other consolidated cases in which he is also a defendant, stemming from NYPD misconduct during OWS-related incidents

6

later in the day following Plaintiff's arrest - testified that he ordered that Plaintiff be arrested, and falsely testified as to both what Plaintiff had done and as to the conditions at the scene of Plaintiff's arrest.

32.     At his deposition in Elliott Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA falsely testified, in relevant part, as follows:

> A .... When they made the turn, there might have been an arrest made at Exchange and Wall but I'm not a hundred percent. The next block north someone sat down in the street as some marchers were going by, and was ranting about his parents losing a house, as I remember about it. But as the marchers passed and went, he was now by himself in traffic. Cars were waiting patiently to go and he wouldn't go join them. So I ordered his arrest. While we were arresting him a female protester jumped on him to prevent us from taking him. And we ended up taking both of those individuals into a police car.  (210:14-211:2)
>
> ....
>
> Q Did you order any arrests that day?
>
> A Yes.
>
> Q When did you order arrests?
>
> A I was involved -- I ordered one arrest
> at Broadway and 14th Street.
>
> Q You mentioned that?
>
> A Yes. I was involved in another arrest
> but I don't think I was the actual -- the girl
> that jumped on the arrest at Wall Street and
> another street that is south of Exchange Place,
> the girl that jumped on, I said, "She's going
> too."  (241:13-24)

33.     The man who had kneeled in the street was not arrested after the marchers passed and went.

34.     Some of the demonstrators were walking by, but many remained and were watching – and video-recording, and photographing - what was transpiring.

35.     The roadway was full of people – including numerous videographers, photographers, and members of the NYPD – at the time Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA ordered the man (and Plaintiff, shortly thereafter) to be arrested.

36.     The man who had kneeled in the street was not by himself in traffic when he was arrested.

37.     There were no cars at the scene waiting patiently to proceed.

38.     There were, in fact, no vehicles on the streets in the area at all, other than parked cars, and NYPD and private security vehicles.

39.     The numerous members of the NYPD who were present at the scene had themselves prevented vehicular traffic from moving at the scene or in the area, including through the use of metal barricades that were placed completely across the roadway to the south of where the man's and Plaintiff's arrest took place.

40.     The street where Plaintiff's arrest occurred - on information and belief Nassau Street - is a one-way street running northbound.

41.     The NYPD police car into which Plaintiff was placed was parked on Nassau Street facing southbound on what would normally be (if there had been any vehicular traffic permitted on the streets in the area at that time by the NYPD, which there was not) a one-way street running northbound.

8

42.     When the NYPD police car into which Plaintiff was placed left the scene, it drove a short distance in the wrong direction on Nassau Street, and then turned right onto, on information and belief, Pine Street.

43.     A large orange and black traffic sign was posted conspicuously on a lamp-post on the corner of Nassau Street and Pine Street.

44.     That traffic sign stated - to any traffic that might otherwise have wanted to turn from Pine Street onto Nassau Street (if there had been any vehicular traffic permitted to be on the street at that time by the NYPD, which there was not):

NASSAU ST.

CLOSED

USE

DETOUR

45.     Plaintiff at no point jumped on the man who was being arrested (or on anyone else).

46.     Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA was on a rampage on the day of Plaintiff's arrest: later the same day, following Plaintiff's arrest, Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA was caught on video unlawfully pepper-spraying two women (the plaintiffs in Elliott) during another OWS-related incident, for which he was

disciplined by the NYPD (loss of 10 vacation days or the equivalent in pay) for using pepper spray in a manner that was outside of NYPD guidelines, and was transferred to another command.

47.     Plaintiff was taken to the NYPD 1st Precinct.

48.     Plaintiff was searched, fingerprinted, and photographed at the precinct, and placed into a holding cell.

49.     Plaintiff was held at the 1st Precinct until the nighttime.

50.     Plaintiff was thereafter taken to Manhattan Central Booking.

51.     Plaintiff was arraigned during the evening of September 25, 2014, and released on her own recognizance.

52.     Plaintiff was falsely charged with one count of violation of Penal Law § 205.30 (Resisting Arrest), one count of violation of Penal Law § 195.05 (Obstruction of Governmental Administration), and one count of violation of Penal Law § 240.20(5) (Disorderly Conduct).

53.     Defendant POLICE DETECTIVE KENNETH ODONNELL is the deponent on the Criminal Court Complaint that was lodged against Plaintiff, and falsely attests, under penalty of perjury, that Plaintiff obstructed vehicular traffic by standing in the middle of the street and refusing his direction to step out of the street, and that Plaintiff pushed his arm when he tried to separate Plaintiff from Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA while Defendant DEPUTY INSPECTOR ANTHONY BOLOGNA was arresting another individual, and that Plaintiff refused to put her hands behind her back, kicked her legs back and forth, wrapped her arms around her body, and threw her arms up and down thereby making handcuffing difficult.

54.     These allegations are lies.

10

55.     Plaintiff had not refused DETECTIVE KENNETH ODONNELL's direction to leave the roadway.  She and a number of other people and police had already been in the roadway for a significant period of time, and she was merely attempting to film, and was filming - without interfering in any way with the police – the arrest of the man in the roadway.

56.     Plaintiff was walking toward the sidewalk, and was almost at the sidewalk, when she was arrested for purportedly refusing to go to the sidewalk.

57.     Plaintiff had not obstructed any vehicular (or pedestrian) traffic, and was arrested on a pretext to prevent her from filming the arrest of the man in the roadway.

58.     Plaintiff's interactions with DETECTIVE KENNETH ODONNELL prior to her arrest occurred very quickly.

59.     Plaintiff did not push DETECTIVE KENNETH ODONNELL's arm away from her.

60.     The first contact made between Plaintiff and DETECTIVE KENNETH ODONNELL occurred when DETECTIVE KENNETH ODONNELL grabbed Plaintiff.

61.     Plaintiff did not intend to, nor did she, obstruct or impair the police, or anyone else.

62.     Plaintiff did not exert any physical force upon, or interfere with, any member of the NYPD (or anyone else), and did not commit any unlawful acts at the time of her arrest.

63.     Plaintiff was simply trying to film the arrest of the man in the roadway, and trying to follow the police and that man onto the sidewalk, and in the midst of trying to do that, Plaintiff was arrested and manhandled, as described above.

64.     DETECTIVE KENNETH ODONNELL's directive to leave the roadway was

given to Plaintiff as a pretext to arrest Plaintiff, in order to prevent Plaintiff from documenting the

arrest.

65.     Defendants' purposeful interference with Plaintiff's attempt to video-record the

police arresting the man who had been kneeling in the street was in flagrant violation of not only

the First Amendment, but also of long-standing internal NYPD written policies and practices (the

consistent violation of which has been long-tolerated within the NYPD)

66.     In 1977 the City of New York and its then-Police Commissioner entered into a

consent decree in the class action Black v. Codd, 73 Civ. 5283 (JNC), which stated, in relevant

part, as follow:

> It is stipulated by and between the attorneys for the parties herein that it is
> the policy of the New York City Police Department and the defendants that
> when a person (or persons) is detained, stopped or arrested in public areas,
> a person or persons not involved in the conduct for which the first person
> is stopped or arrested may remain in the vicinity of the stop or arrest as an
> onlooker or onlookers, subject to the safety of the person stopped, the
> third persons, the general public, and officers of the Police Department,
> and to provisions of law e.g. P.L. 195.05.
> ....
>
> In the following provisions, the term "officer" refers to New York City
> police officers, agents of the defendants:
>
> 1.  A person remaining in the vicinity of a stop or arrest (herein
> after an "onlooker") shall not be subject to arrest for violation of
> Penal Law § 195.05 unless the officer has probable cause to believe
> that a violation of Section 195.05 exists.
>
> 2.  None of the following constitute probable cause for arrest or
> detention of an onlooker unless the safety of officers or other
> persons is directly endangered or the officer reasonably believes
> they are endangered or the law is otherwise violated:
>
> (a) Speech alone, even though crude and vulgar;

12

(b) Requesting and making notes of shield numbers or names of officers;
(c) Taking photographs;
(d) Remaining in the vicinity of the stop or arrest.

3.  Whenever an onlooker is arrested or taken into custody, the arresting officer shall report the action to the supervisor at the station house or other place where the person is taken....

4.  Defendants shall notify all officers and other employees of the Police Department of the terms of this stipulation by appropriate department order within 60 days of the entry of this order. Such order shall embody the terms of paragraphs 1 through 3 of this order.  Area commanders will be informed that the basis for the said departmental order is the settlement of this litigation and that the terms of this order are part of the departmental order. Area commanders shall inform precinct commanders of the existence of this order.
....

The above provisions of this order shall and the same hereby do constitute the final judgment of this court upon the controversy between defendants, plaintiffs and the plaintiff class.

67.     In response to numerous complaints by members of the press and the public, and various civil rights organizations, concerning the routine violations of the First Amendment and the consent decree in <u>Black v. Codd</u>, the NYPD's Chief of Department – in, on information and belief, the summer of 2014 – issued a "FINEST MESSAGE  General Administrative Information" which reiterated the written policy (the consistent violation of which has been long-tolerated within the NYPD) of the NYPD to be as follows:

TO:  ALL COMMANDS

RE: RECORDING OF POLICE ACTION BY THE PUBLIC

MEMBERS OF THE SERVICE ARE REMINDED THAT MEMBERS OF THE PUBLIC ARE LEGALLY ALLOWED TO RECORD (BY

VIDEO, AUDIO, OR PHOTOGRAPHY) POLICE INTERACTIONS. THESE INTERACTIONS INCLUDE ARREST AND OTHER SITUATIONS. MEMBERS OF THE SERVICE WILL NOT INTERFERE WITH A PERSON'S USE OF RECORDING DEVICES TO RECORD POLICE INTERACTIONS. INTENTIONAL INTERFERENCE SUCH AS BLOCKING OR OBSTRUCTING CAMERAS OR ORDERING THE PERSON TO CEASE CONSTITUTES CENSORSHIP AND ALSO VIOLATES THE FIRST AMENDMENT.

IT SHOULD BE NOTED, HOWEVER, THAT PERSONS MAY NOT INTERFERE WITH POLICE OPERATIONS. MEMBERS, IF APPROPRIATE, SHOULD ADVISE THE PUBLIC NOT TO GET TOO CLOSE AND MAY TAKE ACTION ONLY IF THE PERSON INTERFERES WITH THE OPERATION OR THE SAFETY OF THE MEMBERS OF THE SERVICE OR THE PUBLIC.  HOWEVER, MERE RECORDING OF AN INCIDENT DOES NOT CONSTITUTE INTERFERENCE.  COMMANDING OFFICERS WILL ENSURE THAT THE CONTENTS OF THIS MESSAGE ARE DISSEMINATED TO ALL MEMBERS OF THE SERVICE.

68.    DETECTIVE KENNETH ODONNELL intentionally interfered with Plaintiff's attempts to video-record the arrest of the man who had been kneeling in the roadway, and Plaintiff was arrested due to her attempts to video-record the arrest of the man who had been kneeling in the roadway.

69.    Plaintiff did not refuse to put her hands behind her back, or kick her legs back and forth, or wrap her arms around her body, or throw her arms up and down.

70.    Plaintiff – shocked at having been grabbed, shoved to the ground, and manhandled – did stiffen her arms, but she was not told to put them behind her back at any point, and did not refuse to do so.

71.    DETECTIVE KENNETH ODONNELL and POLICE OFFICER FERNANDO CENTENOTALAVERA - two large male officers - were much stronger than Plaintiff and able to

14

bend her arms without any possibility of difficulty.

72.     The charge against Plaintiff for Obstruction of Governmental Administration was

dismissed on the motion of the District Attorney's office on or about April 16, 2012.

73.     The remaining charges against Plaintiff, for Disorderly Conduct and Resisting

arrest, have been dismissed by way of adjournment in contemplation of dismissal.

74.     Plaintiff's camera equipment was damaged as a result of her arrest.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

75.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

76.     By their conduct and actions in seizing plaintiff, searching plaintiff, falsely arresting

and imprisoning plaintiff, assaulting and battering plaintiff, trespassing upon plaintiff, converting

plaintiff's property, maliciously prosecuting plaintiff, abusing process against plaintiff, violating

rights to due process of plaintiff, violating and retaliating for plaintiff's exercise of her rights to

free speech and assembly, failing to intercede on behalf of the plaintiff and in failing to protect the

plaintiff from the unjustified and unconstitutional treatment she received at the hands of other

defendants, defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY

INSPECTOR ANTHONY BOLOGNA, POLICE OFFICER FERNANDO

CENTENOTALAVERA, DOES and/or ROES, acting under color of law and without lawful

justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard

for the natural and probable consequences of their acts, caused injury and damage in violation of

plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

77.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

78.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

79.     By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants POLICE DETECTIVE KENNETH ODONNELL, POLICE DEPUTY INSPECTOR ANTHONY BOLOGNA and RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

80.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

## LIABILITY OF DEFENDANT THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

81.     The plaintiff incorporates by reference the allegations set forth in all previous

16

Paragraphs as if fully set forth herein.

82.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or documenting or reporting their misconduct, including filming them. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other

17

law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence." Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

86.    At all times material to this complaint, the defendant CITY OF NEW YORK has been on continuing notice that officers and commanders of the New York City Police Department tolerate and encourage police to lie, and to otherwise act, to cover up the wrongful conduct of themselves and their fellow officers. This can be shown with reference to the following cases:

a.    Ariza v. City of New York, 1996 U.S. Dist. LEXIS 20250, 14 (E.D.N.Y. March 7, 1996) ["The [municipal] defendants concede, however, that the code exists to prevent other officers from reporting corruption or dishonesty by fellow officers.... [t]he principle behind the 'blue wall of silence' is that officers will suffer recrimination for breaking ranks and subjecting police conduct to public scrutiny."]

b.    White-Ruiz v. City of New York, 1996 U.S. Dist. LEXIS 15571, 23 (S.D.N.Y. October 21, 1996) ["[P]laintiff offers sufficient evidence to permit a reasonable trier of fact to infer that the 'blue wall of silence' constitutes a custom or usage of the Department"]

c.    United States v. Rosario, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ["[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997."]

18

d. Barry v. New York City Police Dep't, 2004 U.S. Dist. LEXIS 5951, 40-41

(S.D.N.Y. April 7, 2004) ["[P]laintiff's witnesses speak from firsthand experience

about the blue wall of silence…. Plaintiff complains of acts that are of the precise

nature as the customs and practices described in the [Mollen Commission]

Report."

e. Griffin v. City of New York et al., 10 Civ. 01824 (E.D.N.Y. 2010) [Plaintiff

detective sues on pattern of retaliation following his reporting fellow detective to

Internal Affairs, fellow officers cover for detective accused of misconduct, *see*,

e.g., at ¶35: "Internal Affairs conducted its investigation into [Detective] Plaintiff's

allegations [of misconduct] against [Detective] McCarthy. All of the material

witnesses failed to cooperate with the investigation by being less than truthful….

[a]s a result, the allegations made by Plaintiff against McCarthy were dismissed as

unsubstantiated."]

87.    At all times material to this complaint, the defendant THE CITY OF NEW YORK,

acting through its police department and through the individual defendants, had de facto policies,

practices, customs and/or usages of engaging in unconstitutional false arrests and related

malicious prosecutions, and in unconstitutional, violent, and overly aggressive actions toward

individuals perceived as being affiliated with the Occupy Wall Street movement. Such policies,

practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct

alleged herein.

88.    The existence of the aforesaid unconstitutional customs and practices, specifically

with regard to the use of excessive force, unlawful detention, interference with protected First

19

Amendment activity, retaliatory use of force, malicious prosecutions, abuse of process and deprivation of liberty without due process of law against individuals apparently associated with Occupy Wall Street while engaged in protected First Amendment activity, are further evidenced, *inter alia*, by the hundreds of incidents - including the incident involving the Plaintiff herein, as set forth above - involving questionable arrests and uses of force by NYPD officers against OWS protestors documented in the press and compiled by The Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School in their publication entitled "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street," published July 25, 2012, *available online at* http://www.documentcloud.org/documents/403969-suppressing-protest.html (last visited March 13, 2014).

89.     Numerous civil rights cases have also been filed in this district (most pending, and some settled or resolved by accepted Rule 68 Offer – information concerning amounts provided as available) arising out of allegations of, *inter alia*, false arrest and excessive force that occurred in relation to OWS.  Some of these cases are (settlement information last updated on March 13, 2014 - a few additional pending cases added to the list since then):

- Schrader v. City of New York, et al., 13 Civ. 1995 (HB) (settled for $82,500);

- Schmidt v. City of New York, et al., 13 Civ. 961 (DLC) (accepted Rule 68 Offer of $15,002, plus payment of $18,000 in attorneys' fees and costs);

- Fields and McKeown v. City of New York, et al., 13 Civ. 8819 (JGK) (pending);

- Eric-John Russell v. City of New York, et al., 13 Civ. 9047 (ALC) (pending);

- Alexander Penley v. City of New York, et al., 14 Civ. 1577 (JGK) (pending);

20

- <u>Rodriguez et al. v. Winski et al.</u>, 12 Civ. 3389 (NRB) (pending);

- <u>Damien Crisp v. City of New York, et al.</u>, 12 Civ. 5842 (RWS) (pending);

- <u>Kelly Hanlin v. City of New York, et al.</u>, 12 Civ. 5844 (RWS) (pending);

- <u>Julie Lawler v. City of New York, et al.</u>, 12 Civ. 5843 (RWS) (pending);

- <u>Phoebe Berg, et al v. City of New York, et al.</u>, 12 Civ. 3391 (TPG) (pending);

- <u>Moira Meltzer-Cohen v. City of New York, et al.</u>, 14 Civ. 516 (SAS) (pending);

- <u>Amanda Clarke v. City of New York, et al.</u>, 13 Civ. 5303 (RWS) (pending);

- <u>Rhiannon Ball v. City of New York, et al.</u>; 13 Civ. 5563 (RWS) (pending);

- <u>Gabriel Brown v. City of New York, et al.</u>, 13 Civ 2058 (NRB) (settled for $15,000);

- <u>Damian Treffs v. City of New York, et al.</u>, 12 Civ. 3030 (HB) (settled for $27,500);

- <u>Friesdat v. The City of New York et al.</u>, 14 Civ. 625 (JGK) (pending);

- <u>Jimenez v. The City Of New York , et al.</u>, 14 Civ. 413 (RA) (pending);

- <u>Shamir v. The City of New York et al.</u>, 13 Civ. 5652 (CM) (pending);

- <u>Adsluf v. The City of New York, et al.</u>, 13 Civ. 2295 (LGS) (settled for $40,000);

- <u>Perloff v. The City of New York, et al.</u>, 13 Civ. 4175 (KBF) (pending);

- <u>Garcia v Bloomberg, et al.</u>, 11 Civ. 6957 (JSR) (pending);

- <u>Elliot, et al. v. City of New York, et al.</u>, 12 Civ. 992 (RWS);

- <u>Schomburg v. Bologna, et al.</u>, 12 Civ. 7161 (RWS);

- <u>Dierken, et al. v. City of New York, et al.</u>, (RWS) (pending);

- <u>Dedrick v. City of New York, et al.</u>, 12 Civ. 7165 (RWS);

- <u>Sterling, et al. v. City of New York, et al.</u>, 12 Civ. 7086 (RWS);

- <u>Clarke, et al. v. City of New York, et al.</u>, 13 Civ. 5303 (RWS);

- <u>Ball v. City of New York, et al.</u>, 13 Civ. 5563 (RWS);

- <u>Brown v. City of New York et al.</u>, 13 Civ. 1018 (KAF) (pending);

- <u>Bogart v. City of New York et al.</u>, 13 Civ. 1017 (NRB) (pending);

- <u>Boss v. City of New York, et al.</u>, 12 Civ. 8728 (GBD) (settled);

- <u>Global Revolution TV, et al. v. City of New York, et al.</u>, 12 Civ. 5086 (GBD) (settled);

- <u>Iskender v. City of New York, et al.</u>, 13 Civ. 2899 (RA) (settled);

- <u>Peat, et al. v. City of New York, et al.</u>, 12 Civ. 8230 (SAS) (settled);

- <u>Arce v. City of New York, et al.</u>, 13 Civ. 8486 (PKC) (settled);

- <u>Laugier v. City of New York, et al.</u>, 13 Civ. 6171 (HB) (pending);

- <u>Jefferson Meighan v. City of New York, et al.</u>, 12 Civ. 7929 (AKH) (settled);

- <u>Pluma v. City of New York, et al.</u>, 13 Civ. 2017 (TPG) (pending);

- <u>Ross, et al. v. City of New York, et al.</u>, 13 Civ. 5012 (VSB) (settled);

- <u>Stoeckley, et al. v. City of New York, et al.</u>, 13 Civ. 6173 (VSB) (pending);

- <u>Time's Up, Inc., et al. v. City of New York, et al.</u>, 13 Civ. 1081 (GBD) (settled);

- <u>Wiles v. City of New York, et al.</u>, 13 Civ. 2898 (HB) (pending);

- <u>Rechtschaffer v. City of New York, et al.</u>, 13 Civ. 0709 (JPO) (settled);

- <u>Adona v. City of New York, et al.</u>, 12 Civ. 7458 (HB) (accepted Rule 68 Offer of $25,001, plus payment of $35,000 in attorneys' fees and costs);

- <u>Tardif v. New York et al.</u>, 13 Civ. 4056 (LTS) (pending);

- <u>Occupy Wall Street, et al. v. City of New York, et al.</u>, 12 Civ. 4129 (GBD)

(settled for $47,000, plus $186,349.58 in attorneys' fees and costs);

- <u>Carpenter, et al. v. City of New York, et al.</u>, 11 Civ. 8414 (GHW) (pending);

- <u>Elliott, et al. v. City of New York, et al.</u>, 12 Civ. 992 (RWS) (MHD) (pending);

- <u>Caravalho, et al. v. City of New York, et al.</u>, 13 Civ. 4174 (PKC) (pending);

- <u>Marom, et al., v. City of New York, et al.</u>, 15 Civ. 2017 (PKC) (pending);

- <u>Allen v. City of New York, et al.</u>,15 Civ. 1918 (PKC) (pending);

- <u>Pesola v City of New York, et al.</u>, 15 Civ. 1917 (WHP) (pending);

- <u>McMillan v. City of New York, et al.</u>, 15 Civ. 1962 (JMF) (pending)[1];

90.     As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

---

1 Defendant DETECTIVE KENNETH ODONNELL is also a defendant in <u>McMillan</u>.

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants:

      a.  Compensatory damages;

      b.  Punitive damages;

      c.  The convening and empaneling of a jury to consider the merits of the claims herein;

      d.  Costs and interest and attorney's fees;

      e.  Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
              April 17, 2015

JEFFREY A. ROTHMAN, Esq.
315 Broadway, Suite 200
New York, New York 10007
(212) 227-2980

Attorney for Plaintiff