UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARISA HOLMES,

       Plaintiff,

  -v-                                            No.  14 CV 5253-LTS

THE CITY OF NEW YORK, et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Marisa Holmes brought this action under 42 U.S.C. section 1983 for violation of her rights under the United States Constitution and the Constitution of the State of New York.  Her claims arise from her arrest on September 24, 2011, during demonstrations by Occupy Wall Street ("OWS") in lower Manhattan.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

       On May 22, 2014, the named Defendants moved to dismiss Plaintiff's Amended Complaint (docket entry no. 13 (hereinafter "AC")) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).  (Docket entry no. 21.)  After the briefing on the motion to dismiss had been completed, Plaintiff moved for leave to file a Second Amended Complaint, which would add certain factual allegations relating to Plaintiff's Section 1983 claim for false arrest.  (See docket entry nos. 57 (Memorandum of Law) and 58 Ex. 1 (Proposed Second Amended Complaint).)

       For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.  Because Plaintiff's proposed Second Amended Complaint contains neither new claims nor new allegations of fact that are relevant to the dismissed claims, her motion for leave

to amend is denied, but Plaintiff will be afforded an opportunity to propose an amended complaint with additional factual material relating to one dismissed claim.

BACKGROUND

The following factual summary is drawn from Plaintiff's Amended Complaint, and is taken as true for purposes of this motion practice.

Plaintiff, a documentary film-maker and journalist who was an "active participant" in OWS, was filming an OWS demonstration outside of One Chase Manhattan Plaza in lower Manhattan in the early afternoon of September 24, 2011.  (AC ¶¶ 9-10.)  Plaintiff, along with numerous other members of the public and officers of the New York Police Department ("NYPD"), was in the middle of the roadway as a young man gave a speech, which Plaintiff was filming.  (AC ¶ 12.)  Given the numerous members of the public and NYPD officers present in the roadway, there was no vehicular traffic on the street at the time.  (AC ¶¶ 38-39.)  Plaintiff alleges that the street on which she was arrested, Nassau Street, was closed to vehicular traffic.  (AC ¶¶ 40, 43-44.)

After the speech had proceeded for several minutes, NYPD officers, including Defendant Deputy Inspector Anthony Bologna, began to place the speaker under arrest.  (AC ¶ 16.)  Defendant Detective Kenneth O'Donnell, who was standing alongside Plaintiff, instructed her (by name) to leave the roadway.  (AC ¶¶ 17, 22.)  Plaintiff did not comply with this instruction, but continued to film the arrest of the speaker, which involved multiple NYPD officers who were moving the speaker from the roadway to the sidewalk.  (AC ¶ 19.)  On the orders of Defendant Bologna, Defendants O'Donnell and Officer Fernando Centenotalavera then placed Plaintiff under arrest while she "was in the process of leaving the roadway."  (AC ¶¶ 23-

24, 31.)  Plaintiff alleges that she was "roughly" brought down to the ground by Defendants O'Donnell and Centenotalavera and then placed in handcuffs that were "applied with an excessive and punitive tightness."  (AC ¶¶ 26-28.)

Plaintiff was placed in a police vehicle and taken to the NYPD 1st Precinct station house, where she was searched, fingerprinted, and photographed.  (AC ¶¶ 41, 47-48.)  Plaintiff was held at the 1st Precinct for several hours, and then taken to Manhattan Central Booking, where she was arraigned and released on her own recognizance.  (AC ¶¶ 49-51.)  Plaintiff was charged with one count each of violations of Penal Law § 205.30 (resisting arrest), § 195.05 (obstruction of governmental administration), and § 240.20(5) (disorderly conduct).  (AC ¶ 52.)  The obstruction of governmental administration charge was later dismissed on motion of the District Attorney; the two other charges were dismissed after adjournment in contemplation of dismissal.  (AC ¶¶72-73.)

DISCUSSION

Legal Standard

Defendants have moved to dismiss the Amended Complaint under either Federal Rule of Civil Procedure 12(b)(6) or 12(c).  Because Defendants have filed an Answer (docket entry nos. 7 & 8), a motion under Rule 12(b)(6) is procedurally barred.  The Court will therefore address Defendants' motion solely as a motion under Rule 12(c), though the standard for such a motion is identical to the standard for a Rule 12(b)(6) motion to dismiss.  Cortes v. City of New York, 700 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007). The Court accepts as true the non-conclusory factual allegations in the complaint and draws all inferences in the Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Consideration of Defendants' Proffered Video Evidence

"The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." O'Shea v. Board of Educ. of Poughkeepsie City Sch. Dist., 521 F. Supp. 2d 284, 288 (S.D.N.Y.2007); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). A document will be considered integral to the complaint if a plaintiff had that document in his or her possession when drafting the complaint and relied upon the document during the drafting process. Id.

Plaintiff did not attach any documents to her Amended Complaint. However, in connection with this motion practice, Defendants have proffered three video recordings they contend should be treated as integral to the Amended Complaint based on the standard set forth in Chambers. (Docket entry no. 22, Exs. 4-6.) Plaintiff objects to this Court's consideration of the video evidence on several grounds.[1]

---

[1] As an initial matter, Defendants' contention that the video evidence should be considered on their Rule 12(c) motion for judgment on the pleadings simply because the videos were allegedly incorporated within their Answer (docket nos. 7 & 8) is unavailing. Defendants did not attach the videos to their Answer as exhibits.

Plaintiff concedes that she used "various videos as sources . . . for a number of the allegations that were made in the Amended Complaint." (Docket entry no. 28 (Memorandum of Law), at 9 n.2.) Plaintiff does not, however, state that she drafted her pleading using the specific videos proffered by Defendants as source material. Defendants have not proffered any other evidence that would establish that the video evidence is integral to the Amended Complaint, and therefore the video evidence is not properly considered in the context of this motion to dismiss.

Plaintiff's Section 1983 Claim for False Arrest and Imprisonment

Plaintiff claims that her arrest and subsequent period of detention were violative of her constitutional rights under the Fourth and Fourteenth Amendments. Defendants move to dismiss this claim on the grounds that there was probable cause for Plaintiff's arrest. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

---

(Id.) Furthermore, although the Second Circuit has stated that documents appended to an answer are among those that may be considered on a Rule 12(c) motion, see L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (considering emails attached to answer that had been sent or received by plaintiff and were "'integral' to the negotiation exchange that [plaintiff] identified as the basis for the complaint"), substantive consideration of material attached to an answer on a Rule 12(c) motion appears to be limited to such material that could otherwise properly be considered at the pleadings stage. Compare Faconti v. Potter, 242 F. App'x 775, 777 (2d Cir. 2007) (on Rule 12(c) motion, consideration of factual material is limited to "the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit" (internal quotation marks and modifications omitted)), with Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009) (on Rule 12(c) motion, "we rely on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").

Defendants argue that there was probable cause to arrest Plaintiff under three sections of the New York Penal Law ("N.Y.P.L."). In order to establish probable cause, "the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information [must be] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is being committed by the person to be arrested." Dunaway v. New York, 442 U.S. 200, 208 (1979). At this stage of the proceedings, all of Plaintiff's well pleaded factual allegations must be taken as true, and all reasonable inferences drawn in her favor. Roth, 489 F.3d at 501. Defendants have failed to demonstrate that the allegations of the Amended Complaint, viewed under this standard, establish conclusively that there was probable cause for Plaintiff's arrest.

1.   Section 240.20(5) - Obstruction of pedestrian or vehicular traffic

N.Y.P.L. section 240.20 defines various disorderly conduct offenses. Section 240.20(5) provides that one "is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [he or she] obstructs vehicular or pedestrian traffic." The Second Circuit, in interpreting Section 240.20(5), has required a showing that the putative offender was "actually and immediately blocking" the pedestrian or vehicular traffic in question. Zellner v. Summerlin, 494 F.3d 344, 372 (2d Cir. 2007).

Reviewing the pleadings in the light most favorable to Plaintiff, it is not clear that Plaintiff was actually and immediately blocking any pedestrian or vehicular traffic. The allegations in the Amended Complaint demonstrate that the street in question was full of

members of the public, journalists, and NYPD officers.  A reasonable factfinder could determine that Plaintiff, individually, was not the actual or immediate cause of any obstruction of progress in the roadway.

        2.      <u>Section 240.20(6) - Refusal to Disperse</u>

Defendants next argue that there was probable cause to believe Plaintiff was violating N.Y.P.L. section 240.20(6), which provides that one "is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [he or she] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  The Amended Complaint acknowledges that Plaintiff was congregating with other persons in a public place, but there is no allegation that the crowd or Plaintiff was ordered to "disperse."  The allegations in the Amended Complaint indicate that Plaintiff was individually -- indeed, by name -- told to leave the roadway.  This is insufficient to demonstrate that there was order to disperse because, while "a group can disperse[,] an individual cannot."  <u>Higginbotham v. City of New York</u>, 105 F. Supp. 3d 369, 373 (S.D.N.Y. 2015) (internal modifications omitted).  A reasonable factfinder could determine that probable cause to believe Plaintiff was violating N.Y.P.L. 240.20(6) was lacking at the time of her arrest.

        3.      <u>Section 195.05 - Obstruction of Governmental Administration</u>

Finally, Defendants claim that there was probable cause to believe that Plaintiff was violating N.Y.P.L. section 195.05, which provides (as relevant to this case) that one "is

guilty of obstructing governmental administration when he [or she] intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." The New York Court of Appeals has made it clear that violation of the statute requires the use of the means specified in the statute, which "requires as an element of the crime that the accused act by one of three methods: (1) 'intimidation,' (2) 'physical force or interference,' or (3) 'any independently unlawful act.'"  People v. Case, 42 N.Y.2d 98, 102 (1977).  There is no allegation that Plaintiff deployed intimidation or physical force.  Although the allegations in the Amended Complaint indicate that Plaintiff did not immediately leave the roadway upon receiving an order to do so, the allegations are insufficient, for the reasons explained above, to demonstrate that Plaintiff's failure to vacate the roadway was an "independently unlawful act."

Plaintiff has therefore stated a claim for false arrest and Defendants have failed to establish, at this stage of the litigation, that her claims are precluded by probable cause.[2] Defendants' remaining contention, that they are shielded by the doctrine of qualified immunity, is also unavailing at this juncture.  Qualified immunity is a complete defense to civil claims for damages if the officers in question can establish "arguable probable cause" – a slightly lower threshold than actual probable cause, but one that is "usually not successful" on a motion to dismiss given the "formidable hurdle" of overcoming allegations construed in the light most

---

[2] Defendants seek dismissal of Plaintiff's claims for abuse of process and retaliation solely on the basis that there was probable cause for Plaintiff's arrest.  For substantially the same reasons that Defendant's motion is denied as to Plaintiff's claim for false arrest, their motion is also denied as to Plaintiff's claims for abuse of process and retaliation.

favorable to the Plaintiff.  Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 191-92 (2d Cir. 2006); see also Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2014) (describing the standard for qualified immunity).  Here, there is no basis to find arguable probable cause for Plaintiff's arrest under any of the three statutes in question for substantially the reasons stated above.  The allegations before the Court, construed in the light most favorable to the Plaintiff, do not demonstrate that there was an arguable basis to believe Plaintiff was violating any of the three statutes Defendants identify.[3]

Defendants' motion to dismiss Plaintiff's claim for false arrest is denied.

Plaintiff's Claim for Malicious Prosecution

Plaintiff next claims that her prosecution for violation of three sections of the N.Y.P.L. was malicious, in violation of her rights under the Fourth and Fourteenth Amendments.  In order to state a malicious prosecution claim, Plaintiff "must show a violation of [her] rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under [New York] state law."  Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted).  To state a claim for violation of her Fourth Amendment rights, Plaintiff must demonstrate "a sufficient post-arraignment liberty restraint" such that her rights under the Fourth Amendment were implicated.  Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  To state a malicious prosecution claim under New York law, Plaintiff must establish a lack of probable cause, the commencement of a criminal proceeding later terminated

---

[3]    Defendants also assert that Plaintiff's trespass claim is duplicative of her Fourth Amendment claim and therefore must be dismissed if the arrest-related Fourth Amendment claim is dismissed.  The arrest-related Fourth Amendment claim survives this motion practice, and the trespass claim accordingly survives as well.

in her favor, and actual malice. Martinez v. City of Schenectady, 97 N.Y.2d 78, 84 (2001).

Defendants challenge Plaintiff's malicious prosecution claim on the grounds that she does not adequately allege a post-arraignment liberty restraint. The Amended Complaint alleges only that Plaintiff was released on her own recognizance after her arraignment, and contains no allegations relating to any post-arraignment deprivations of liberty. Plaintiff therefore fails to state a claim for malicious prosecution.

Plaintiff may seek leave to amend her Complaint in order to provide additional factual material relevant to this claim insofar as it relates to the obstruction of governmental administration charge, given representations by counsel during the briefing of this motion that Plaintiff was required to appear in court on several occasions. (See docket entry no. 28, at 21.) The Second Circuit has not provided a bright-line rule to establish when court appearances alone suffice to establish a Fourth Amendment liberty deprivation. It has, however, held that two court appearances do not suffice, Faruki v. City of New York, 517 F. App'x 1, 2 (2d Cir. 2013), but that eight court appearances combined with a ban on out-of-state travel would, Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).[4]

Defendant's motion to dismiss the malicious prosecution claim is granted, with leave to move for permission to replead the claim in connection with the obstruction of justice charge only.

---

[4] The permission to move to replead applies only to Plaintiff's allegation of malicious prosecution of the charge of obstruction of governmental administration, which was dismissed on motion of the District Attorney; the other two charges were adjourned in contemplation of dismissal, which is not a "favorable termination" as required by New York law. Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001).

Plaintiff's Claims for Assault and Battery

Plaintiff claims that the circumstances of her arrest involved being roughly brought to the ground by large NYPD officers and then handcuffed tightly, which were allegedly excessive uses of force that violated her Fourth and Fourteenth Amendment rights.[5]  Plaintiff identifies no injuries resulting from her arrest.  See Hudson v. McMillian, 503 U.S. 1, 7 (1992) (noting that the amount of force, rather than the injury sustained, is the focus of the inquiry, but holding that "the extent of injury suffered by [the plaintiff] is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation" (internal quotation marks omitted)).  Where a plaintiff alleges only that she was roughly brought to the ground during their arrest, without any evidence of injury, courts generally dismiss excessive force claims.  See, e.g., Higginbotham, 105 F. Supp. 3d at 376 (citing cases).  As to Plaintiff's allegations that her handcuffs were applied with punitive tightness, she alleges only that the handcuffs were applied tightly and that she complained about their tightness.  It is well-established in this District that "tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising."  Id.

Plaintiff therefore fails to state a claim for excessive force, and Defendants' motion is granted as to the assault and battery claims.


Plaintiff's Claim for Supervisory Liability

Plaintiff's Amended Complaint separately alleges that defendants O'Donnell and Bologna are liable for failure to remedy the alleged constitutional violations and failure properly

---

[5]   A claim for assault under Section 1983 is duplicative of an excessive force claim.  Higginbotham, 105 F. Supp. 3d at 377.

to train, supervise, or discipline the defendants who were directly responsible for Plaintiff's arrest and prosecution.  Defendants move to dismiss these claims on two grounds: (1) that Plaintiff did not suffer a constitutional violation, and (2) that a supervisory liability or failure to intervene claim should be dismissed where Plaintiff alleges direct action by those same defendants.  Because Plaintiff has stated a claim for constitutional violations, Defendants' first theory is unavailing.

Defendants' second theory is also unavailing.  Direct participation is a possible basis for supervisory liability, not a duplicative claim:

> The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).  As Defendants acknowledge, Plaintiff alleges direct participation by both supervisory defendants in certain aspects of her arrest.  (E.g., AC ¶ 28.)  Other aspects of Plaintiff's allegations do not relate to direct participation, but rather only to supervision and failure to intervene.  (E.g., AC ¶ 16, 31.)  Plaintiff may proceed with this litigation on these alternate theories of certain Defendants' liability.  See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343 (2d Cir. 1993) ("[A] party may properly submit a case on alternative theories.").

Defendants' motion to dismiss Plaintiff's second claim for relief on the theory of supervisory liability or failure to intervene is denied.

Plaintiff's Claim Against the City of New York

Plaintiff may state a claim against the City of New York, a municipal defendant, if she alleges facts showing the existence of an official policy or custom causally related to a deprivation of her constitutional rights. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992). Evidence of a policy or custom may include a municipality's failure to provide adequate training or supervision of its agents, when that failure rises to the level of deliberate indifference. See Bd. of Cnty. Commr's of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability.").

The Second Circuit has recognized that a plaintiff need not prove and document a failure to train at the pleading stage to state a claim for municipal liability under Monell, given the difficulties inherent in obtaining relevant facts absent discovery. See Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."); see also Castilla v. City of New York, 2012 WL 3871517, at *4 (S.D.N.Y. Sept. 6, 2012) ("The Second Circuit has not yet addressed whether Iqbal has heightened the pleading requirements for such a municipal liability claim, but district courts in

this Circuit have continued, post-Iqbal, to apply the pleading standard articulated in Amnesty to a Monell claim based on a failure to train.").  Here, Plaintiff alleges that the City: (1) had an official policy precluding interference with individuals attempting to record or document police actions (an established Constitutional right under the First Amendment), but (2) failed to properly train police officers to ensure that those individuals would not actually be interfered with.  Plaintiff alleges that the City was on notice that the NYPD was interfering with individuals' attempts to record or document police actions.

Plaintiff's allegations suffice, at the pleading stage, to state a claim for Monell liability, and Defendants' motion to dismiss this claim is denied.

Plaintiff's Motion for Leave to Amend

On January 4, 2016, Plaintiff moved for leave to amend her complaint to include material relating to "the lack of probable cause and defendants' ineligibility for qualified immunity."  (Docket entry no. 57, at 3.)  Defendants oppose the motion.

Because the factual allegations contained in the Amended Complaint suffice to overcome the defenses of probable cause and qualified immunity at the pleading stage, the additional allegations in the proposed Second Amended Complaint are not necessary for Plaintiff to state a claim.  Moreover, because the new factual material is sensitive (see docket entry no. 48 (striking from the docket a letter from Plaintiff containing allegations similar to those in the proposed Second Amended Complaint)), the interests of justice do not require allowing Plaintiff to put forward these allegations in her pleading.

Plaintiff's motion for leave to amend is denied.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as to Plaintiff's claims for relief under Section 1983 based on the theories of malicious prosecution, assault, and battery, and otherwise is denied.

Plaintiff's motion for leave to amend is denied. Plaintiff may move for further leave to amend <u>solely</u> to provide additional factual material relevant to her claim for malicious prosecution for obstruction of governmental administration. Any such motion must be filed by **March 21, 2016**.

This Order resolves docket entry nos. 21 and 56. This case remains referred to Magistrate Judge Ellis for general pre-trial management (<u>see</u> docket entry no. 16).

SO ORDERED.

Dated: New York, New York
March 4, 2016

                                                                            /s/ Laura Taylor Swain
                                                                            LAURA TAYLOR SWAIN
                                                                            United States District Judge