UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARISA HOLMES,

       Plaintiff,

  -v-                                                           No. 14 CV 5253-LTS-SDA

THE CITY OF NEW YORK et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Marisa Holmes brings this action under 42 U.S.C. § 1983 against the City of New York and individual Defendants Kenneth O'Donnell, Anthony Bologna, and Fernando Centeno-Talavera (collectively, the "Defendants") for violation of her rights under the United States Constitution arising from her arrest on September 24, 2011, during demonstrations by Occupy Wall Street ("OWS") in lower Manhattan. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

       On March 4, 2016, the Court granted Defendants' motion to dismiss as to Plaintiff's claims for malicious prosecution, assault, battery, and excessive force. (Docket entry no. 76.) On February 8, 2017, the Court denied Plaintiff's motion for leave to amend her malicious prosecution claim. (Docket entry no. 123.) The Court also declined to reconsider its dismissal of Plaintiff's excessive force claim. (Id.) Defendants now move for summary judgment dismissing Plaintiff's false arrest, trespass, abuse of process, fabrication of evidence, and First Amendment retaliation claims. (Docket entry no. 134.) Defendants also move for summary judgment dismissing Plaintiff's claim for municipal liability against the City of New York, her claim for supervisory liability against Individual Defendants O'Donnell and Bologna,

and her claims against Individual Defendants Bologna and Centeno-Talavera. (Id.) Plaintiff cross-moves for summary judgment on her false arrest, fabrication of evidence, First Amendment interference, and municipal liability claims. (Docket entry no. 138.)

On July 14, 2017, after oppositions to the parties' cross-motions for summary judgment had been filed, Plaintiff requested leave to assert previously withdrawn municipal liability claims based upon a June 28, 2017, New York City Civil Complaint Review Board report. (Docket entry no. 165.) The Court denied Plaintiff's request, which was made after the close of discovery and at the reply stage of summary judgment briefing, as unfairly prejudicial to the defense and contrary to the interests of efficiency and judicial economy. (Docket entry no. 168.)

The Court has considered carefully the parties' submissions. For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's motion for summary judgment is denied in its entirety.

BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[1] Plaintiff is a documentary film-maker and journalist who worked with the OWS media group. (Docket entry no. 139, Pl. 56.1 St. ¶ 6; docket entry no. 162, Holmes Decl. ¶ 2.) Defendant Kenneth O'Donnell is a New York Police Department ("NYPD") detective and a lawyer in the NYPD legal bureau. (Pl. 56.1 St. ¶ 1.) Defendant Fernando Centeno-Talavera is a police officer with the NYPD and

---

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions, including video evidence whose authenticity is undisputed.

Defendant Anthony Bologna is a deputy inspector with the NYPD. (Docket entry no. 13, Am. Compl. ¶ 7.)

On the morning of September 24, 2011, Plaintiff arrived at Zuccotti Park and left with a march. (Docket entry no. 136, Def. 56.1 St. ¶¶ 1-2.) Plaintiff had her camera out and was filming the march as it was happening. (Id. ¶ 3.) The march left Zuccotti Park, continued south on Broadway, and then turned onto Wall Street. (Id. ¶ 4.) From Wall Street, the march turned north onto Nassau Street. (Id. ¶ 9.) Plaintiff proceeded north on Nassau Street until she reached the corner of Nassau and Cedar Street. (Id. ¶ 10; docket entry no. 163, Pl. Resp. to Def. 56.1 St. ("Pl. Resp.") ¶ 10.) At the corner of Nassau and Cedar, Plaintiff encountered a man, known as R.S., kneeling in the street and giving a speech. (Def. 56.1 St. ¶ 11.) Plaintiff noticed R.S. and began to film his speech. (Pl. 56.1 St. ¶ 20; docket entry no. 159, Def. Resp. to Pl. 56.1 St. ("Def. Resp.") ¶ 20.) The parties dispute whether NYPD officers on the scene were attempting to direct individuals gathered on the roadway towards the sidewalk during this time. (Compare Pl. Resp. ¶¶ 46, 71, 134 with Def. 56.1 St. ¶¶ 46, 71.) The parties do not dispute that, shortly after R.S. finished his speech, he was placed under arrest. (Def. 56.1 St. ¶ 20.) The parties dispute the events that transpired next.

Defendants allege that, following R.S.'s arrest, Bologna ordered several NYPD officers, including O'Donnell, to clear the street of protestors. (Id. ¶ 54.) Defendants contend that Plaintiff ignored O'Donnell's order to leave the street, instead walking around O'Donnell to the location where R.S. was being handcuffed and filming the arresting officer from approximately one-half of an inch away. (Id. ¶ 57.) Defendants allege that after Plaintiff made contact with one of the officers arresting R.S., O'Donnell warned Plaintiff to get out of the street again, at which point Plaintiff turned around, swatted at O'Donnell's hand, and told him not to

touch her property.  (Id. ¶¶ 58-60.)  O'Donnell then placed Plaintiff under arrest with the assistance of Centeno-Talavera.  (Id. ¶¶ 61, 72.)

Plaintiff alleges that, after allowing Plaintiff to film R.S. for over two minutes, O'Donnell told her to get out of the street just as police officers began to cuff R.S.  (Pl. 56.1 St. ¶ 29, 31; Holmes Decl. ¶ 19-20.)  Plaintiff alleges that O'Donnell "fixated" on her over others present in the roadway, addressing her by name, asking her to leave the roadway, and then blocking the lens of her camera to prevent Plaintiff from continuing to film R.S.'s arrest.  (Pl. 56.1 St. ¶¶ 31, 34; Holmes Decl. ¶¶ 20, 22.)  Plaintiff contends that she then moved alongside the officers carrying R.S. towards the south sidewalk of Nassau Street, and that she was in the process of leaving the roadway in compliance with O'Donnell's request when she was arrested.  (Pl. 56.1 St. ¶ 32; Holmes Decl. ¶¶ 21, 30-32.)  Plaintiff admits that, at one point while she was filming R.S.'s arrest, an NYPD officer's elbow bumped into her camera.  (Pl. 56.1 St. ¶ 44; Holmes Decl. ¶ 76.)

In addition to their disparate accounts of the events preceding Plaintiff's arrest, the parties also proffer conflicting evidence as to whether Plaintiff subsequently resisted arrest (compare Def. 56.1 St. ¶ 51, 61-62, 104-105, 107-109 with Pl. Resp. ¶ 51, 61-62, 104-105, 107-109 and Holmes Decl. 37, 41-44, 70-71, 73-74, 78-79, 83, 84), and whether Plaintiff was blocking vehicular traffic prior to her arrest (compare Pl. 56.1 St. ¶¶ 24-25, 61-65 and Holmes Decl. ¶¶ 54, 66 with Def. Resp. ¶¶ 24-25, 61-65 and Def. 56.1 St. ¶¶ 101, 110, 112, 114-115).  Defendants contend that Plaintiff resisted arrest by trying to break away from the arresting officers and using force to physically prevent her arms from going behind her back.  (Def. 56.1 St. ¶¶ 51, 61-62, 104.)  Defendants also contend that Plaintiff further resisted arrest by throwing her arm up, clutching her left arm against her chest, and spreading her legs apart.  (Id. ¶¶ 105,

107-109.)  Finally, Defendants allege that Plaintiff blocked a postal van and another vehicle from proceeding on Nassau Street.  (Def. 56.1 St. ¶¶ 101, 110, 112, 114-115.)  Plaintiff disputes each of these allegations (see Pl. Resp. ¶ 51, 61-65, 104-105, 107-109; Holmes Decl. ¶ 41-44, 70-71, 73-74, 78-79, 83), and also argues that her large backpack made it impossible for her to place her hands behind her back (see Pl. Resp. ¶ 106; Holmes Decl. 37), and that Nassau Street was closed to vehicular traffic that day (see Pl. 56.1 St. ¶¶ 24-25, 61-65; Holmes Decl. ¶¶ 54, 66).  It is undisputed that Plaintiff was in the roadway while R.S. was giving his speech, and that Plaintiff was arrested while on the roadway.  (Pl. Resp. ¶ 22; Def. Resp. ¶ 21; Holmes Decl. ¶ 30.)

Plaintiff's arrest was processed by Centeno-Talavera.  (Def. 56.1 St. ¶ 76.)  Plaintiff was charged with resisting arrest, obstruction of governmental administration in the second degree, and disorderly conduct.  (Docket entry no. 140-2, Criminal Compl.)  The criminal complaint, which was signed and sworn to by O'Donnell, states that Plaintiff "was obstructing vehicular traffic by standing in the middle of the street," that Plaintiff "pushed [O'Donnell's] arm away," and that Plaintiff "refused to put [her] hands behind [her] back, kicked [her] legs back and forth, wrapped [her] arms around [her] body, and threw [her] arms up and down thereby making handcuffing difficult."  (Id. at 1-2.)  The obstruction of governmental administration charge against Plaintiff was ultimately dismissed on motion of the District Attorney; the two other charges were dismissed after adjournment in contemplation of dismissal.  (See docket entry no. 161-2, Apr. 16, 2012 Hr'g Tr.)  Plaintiff made five court appearances in connection with these charges.  (See docket entry no. 161-3, Crim. Appearance History.)

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted)). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Plaintiff's False Arrest and Trespass Claims

Defendants argue that Plaintiff's false arrest and trespass claims should be dismissed because O'Donnell had probable cause to arrest Plaintiff. The existence of probable cause is a complete defense to an action for false arrest under section 1983. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1994). In general, probable cause exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. "Whether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant." Ackerson v. City of White Plains, 702 F.3d 15, 20 (2d Cir. 2012) (internal quotations and citations omitted). Accordingly, Defendants need only show that there was probable cause to arrest Plaintiff for any single offense. Marcavage v. City of New York, 689 F.3d 98, 109-110 (2d Cir. 2012).

Here, Defendants argue that probable cause existed for a violation of New York Vehicle and Traffic Law § 1156(a), which provides that "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." A violation of section 1156(a) is defined as a "traffic infraction" under New York law. See N.Y. Veh. & Traf. Law §§ 1101, 1800(a). A traffic infraction, however minor, can establish probable cause for a custodial arrest. United States v. Scopo, 19 F.3d 777, 782 (2d Cir. 1994); see also N.Y. Veh. & Traf. Law § 155 ("For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."). Based on the undisputed fact that Plaintiff was standing in the roadway, probable cause existed for her arrest. See Roper v. City of New York, 2017 WL 2483813, at *3-4 (S.D.N.Y. June 7, 2017) (finding probable cause for violation of section 1156(a) based on the fact that plaintiffs "voluntarily entered the street from the sidewalk"); Pinto v. City of New York, 2017 WL 5508917, at *4 (S.D.N.Y. Mar. 2, 2017) (same). At a minimum, reasonable police officers could have disagreed as to whether there was probable cause to arrest Plaintiff for a violation of Vehicle and Traffic Law § 1156(a), thus entitling Defendants to qualified immunity. See Gonzalez v. City of New York, 2017 WL 149985, at *2 (S.D.N.Y. Jan. 13, 2017) (granting qualified immunity where plaintiff was walking in the roadway when a sidewalk was provided, in violation of section 1156(a)).

Accordingly, Defendants' motion for summary judgment dismissing Plaintiffs' false arrest claim is granted, and Plaintiff's corresponding cross-motion for summary judgment on this claim is denied.[2]

---

[2] Plaintiff makes no attempt to distinguish her trespass claim from her false arrest claim. Accordingly, Defendant's motion is also granted with respect to Plaintiff's trespass claim

Plaintiff's Fabrication of Evidence Claim

To prevail on a fabrication of evidence claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 Fed. App'x 149, 152 (2d Cir. 2012). The existence of probable cause is not a defense to a fabrication of evidence claim. Id.

Plaintiff makes no argument that Defendants Bologna and Centeno-Talavera fabricated evidence, and thus her fabrication of evidence claim must be dismissed as against those Defendants. (See Am. Compl. ¶¶ 53-62.) Plaintiff does argue, however, that O'Donnell fabricated statements in the criminal complaint that Plaintiff "was obstructing vehicular traffic by standing in the middle of the street," that Plaintiff "pushed [O'Donnell's] arm away," and that Plaintiff "refused to put [her] hands behind [her] back, kicked [her] legs back and forth, wrapped [her] arms around [her] body, and threw [her] arms up and down thereby making handcuffing difficult." (Criminal Compl. at 1-2.) Plaintiff denies that she pushed O'Donnell's arm away, refused to put her arms behind her back, kicked her legs back and forth, wrapped her arms around her body, or threw her arms up and down. (Holmes Decl. ¶ 37-38, 42-44, 70, 73-74, 84.) The parties also dispute whether Plaintiff was in fact blocking vehicular traffic prior to her arrest. (Compare Pl. 56.1 St. ¶¶ 24-25, 61-65 and Holmes Decl. ¶¶ 54, 66 with Def. Resp. ¶¶ 24-25, 61-65 and Def. 56.1 St. ¶¶ 101, 110, 112, 114-115.) Defendants contend that video evidence submitted in connection with the parties' motions demonstrates that O'Donnell's statements in the criminal complaint were not false. The video evidence, however, is unclear and does not establish Plaintiff's conduct to the extent that that no reasonable juror could conclude that

---

to the extent that claim is also premised on the facts and circumstances surrounding her arrest.

O'Donnell's statements were not false. Indeed, as Plaintiff notes, contrary to his statement that Plaintiff pushed his arm away, O'Donnell testified at his deposition that Plaintiff did not make contact with him at any point. (See docket entry no. 140-1, O'Donnell Dep. 133:16-18.) Because reasonable inferences could be drawn either way on the basis of the current record, and because Plaintiff's conduct during her arrest is ultimately material to a jury's decision where Plaintiff is charged with resisting arrest, neither party is entitled to summary judgment on this claim with respect to Defendant O'Donnell.

Plaintiff's Municipal Liability Claim

To prove a claim for municipal liability under section 1983, a plaintiff must establish three elements: (1) that an official policy or custom is in place; (2) that there is a causal link between plaintiff's alleged constitutional injury and the policy or custom; and (3) that plaintiff in fact suffered a constitutional injury. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted). "Where the contention is not that the actions complained of were taken pursuant to a . . . policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). "Whether the official in question possessed final policymaking authority is a legal question, . . . which is to be answered on the basis of state law." Id. (citations omitted).

Here, Plaintiff points to no state law or local custom that would support the conclusion that the City has vested O'Donnell with relevant final policymaking authority. Plaintiff argues that O'Donnell is a final policymaker because, as a member of the NYPD legal

bureau, his legal advice is binding upon all members of the NYPD regardless of whether they outrank him. However, Plaintiff has presented no evidence to suggest that O'Donnell gave legal advice in connection with Plaintiff's arrest on September 24, 2011. Aside from O'Donnell's position in the legal bureau, Plaintiff has not adduced any evidence to demonstrate that O'Donnell has the authority to bind the City in any relevant respect, or that O'Donnell was tasked by state law with responsibility for making policy with respect to OWS or arrests in general. Indeed, O'Donnell's uncontroverted testimony suggests he did not have authority within the legal department to order arrests voided, nor did O'Donnell have the authority in his capacity as a NYPD detective to issue binding commands to other police officers. (See O'Donnell Dep. 91:4-16; 92:22-93:18.) Because Plaintiff has not established as a matter of law that O'Donnell is a final policymaker, Defendants' motion for summary judgment dismissing Plaintiff's municipal liability claim is granted, and Plaintiff's corresponding cross-motion for summary judgment on this claim is denied.

Plaintiff's First Amendment Interference Claim

Plaintiff argues that she is entitled to summary judgment on her First Amendment interference claim against Individual Defendant O'Donnell because "[t]he First Amendment right to film in public was clearly established and the unlawfulness of O'Donnell's interference with Plaintiff's filming was apparent."[3] (Docket entry no. 141 at 7.) Defendants assert that they are entitled to qualified immunity and that, in any event, any First Amendment right that Plaintiff may have had to engage in the activity was not violated because Defendants' orders to clear the street were a reasonable time, manner, and place restriction. Because Defendants are entitled to

---

[3] Plaintiff's First Amendment interference claim, unlike her First Amendment retaliation claim, appears to be based on O'Donnell's alleged efforts to block Plaintiff's video recording of R.S.'s arrest prior to Plaintiff's own arrest.

qualified immunity with respect to Plaintiff's interference claim, the Court does not address the merits of Plaintiff's constitutional claim. See DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) ("[W]here qualified immunity is clearly warranted at the second step of analysis, courts may simply rule on that basis without employing 'scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case'") (internal quotations omitted).

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether the relevant law was clearly established, a court considers "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014). Even if the Second Circuit has not explicitly held a course of conduct to be unconstitutional, the law may be clearly established if "decisions from this or other circuits clearly foreshadow a particular ruling on the issue." Id. (internal quotations omitted).

In September 2011, when Plaintiff was arrested, neither the Supreme Court nor the Second Circuit had directly addressed the constitutionality of recording police activity. See Mesa v. City of New York, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013) (stating that "no Second Circuit case has directly addressed the constitutionality of the recording of officers engaged in official conduct"). As of September 2011, the First, Ninth, and Eleventh Circuits had concluded that the right exists, but the Third and Fourth Circuits had determined that the right

was not clearly established.  Compare Glik v. Cunniffe, 655 F.3d 78, 82, 85 (1st Cir. 2011); Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) with Kelly v. Borough of Carlisle, 622 F.3d 248, 261-62 (3d Cir. 2010); Szymecki v. Houck, 353 Fed. App'x 852, 853 (4th Cir. 2009).

The decisions that had by 2011 recognized a right to film police conduct were not based on facts sufficiently consistent with those now before the Court to support a determination that Plaintiff's right to engage in the conduct with which Defendants interfered was so clearly established in 2011 that "every reasonable [police officer] would have understood that what he is doing violates that right." Terebesi, 764 F.3d at 230 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  By Plaintiff's own account, she was permitted to film R.S. for two minutes before being instructed to move away as the police began to cuff R.S., and she was at close enough range to come into contact with one of the officers in the course of filming R.S.'s arrest.  (See Pl. 56.1 St. ¶ 29 ("During this over two minutes of time that Plaintiff was filming [R.S.] deliver his oration, the members of the NYPD present at the scene said nothing to ask any members of the public or journalists to get out of the roadway"); Holmes Decl. ¶ 76 ("At one point while I was filming the police as they carried [R.S.] towards the sidewalk a member of the NYPD moved his elbow back and his elbow bumped into my camera."))  By contrast, the court in Glik noted that the plaintiff in that case filmed police officers "from a comfortable remove."  655 F.3d at 84.  In Fordyce, there was a material issue of fact as to whether the interference manifested as assault and battery by the police officer.  55 F.3d at 439.  In Smith, the court did not detail the underlying conduct but noted, in rejecting the claim of a First Amendment violation, that the right to photograph or videotape police conduct is "subject to reasonable time, place, and manner restrictions."  212 F.3d at 1333.  The right to record police activity at extremely close range

during an arrest was not clearly established at the time Plaintiff's camera was blocked and she was instructed to move away; O'Donnell is therefore entitled to qualified immunity.[4]  Plaintiff's motion for summary judgment on this claim is accordingly denied.

Plaintiff's First Amendment Retaliation Claim

To establish a claim for retaliation under the First Amendment, a plaintiff must show: "(1)[s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  The existence of probable cause will defeat a First Amendment claim that is "premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her." Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012); Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause

---

[4] In reaching this conclusion, the Court notes that, after September 2011, courts in this Circuit have trended towards general recognition of a First Amendment right to record police activity, although considerable debate still remains regarding the scope of the right and the extent to which it is clearly established. See, e.g., Mesa, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013) (right to record officers engaged in official conduct not clearly established as of 2009); Higginbotham, 105 F. Supp. 3d 369, 381 (S.D.N.Y. 2015) (disagreeing with Mesa and recognizing First Amendment right to record police activity that was clearly established as of November 2011); Pluma v. City of New York, 2015 WL 1623828, at *7 (S.D.N.Y. Mar. 31, 2015) (right to photograph and record police activity not clearly established as of December 2011); Charles v. City of New York, 2017 WL 530460, at *21-25 (E.D.N.Y. Feb. 8, 2017) (recognizing clearly established right to film police officers, provided plaintiff was not interfering with police activity, in connection with June 2012 arrest); Gonzalez v. City of New York, 2015 WL 6873451, at *7 (S.D.N.Y. Nov. 9, 2015) (right to record police activity not clearly established as of July 2012); Gerskovich v. Iocco, 2017 WL 3236445, at *8-9 (S.D.N.Y. July 17, 2017) (recognizing, in dicta, clearly established right to record police officers conducting official police activity in public areas as of September 2012).

that is in reality an unsuccessful attempt to deter or silence criticism of the government.") Because, as explained above, probable cause existed for Plaintiff's arrest, Defendant's motion for summary judgment dismissing Plaintiff's First Amendment retaliation claim is granted.

Plaintiff's Abuse of Process Claim

An abuse of process claim under New York law lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994); Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403 (1975) ("Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party."). Defendants argue that probable cause to arrest Plaintiff defeats her abuse of process claim, or at the very least entitles them to qualified immunity. Although many district courts in this Circuit have held that a finding of probable cause for an arrest vitiates a claim for abuse of process based on that arrest, see, e.g., Pinter v. City of New York, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013), the Second Circuit recently acknowledged that its own precedent has been mixed, causing "considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law." Mangino v. Incorporated Village of Patchogue, 808 F.3d 951 (2d Cir. 2015). Because of the lack of clarity in the law, officers of reasonable competence could disagree as to whether arresting or instituting charges against Plaintiff constituted an abuse of process where there was probable cause for Plaintiff's arrest. Defendants are thus, at a minimum, entitled to qualified immunity. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's abuse of process claim.

Plaintiff's Claims Against Bologna and Centeno-Talavera

Defendants argue that all claims against Centeno-Talavera and Bologna fail because neither Defendant was personally involved in the alleged deprivation of Plaintiff's constitutional rights. Even assuming, however, that Centeno-Talavera and Bologna were personally involved in Plaintiff's arrest, for the reasons explained above, probable cause bars Plaintiff's false arrest, trespass, and First Amendment retaliation claims against both Defendants, and both Defendants would be entitled to qualified immunity with respect to Plaintiff's First Amendment interference and abuse of process claims. Thus, Defendants' motion for summary judgment dismissing Plaintiff's false arrest, trespass, First Amendment retaliation, First Amendment interference, and abuse of process claims against Centeno-Talavera and Bologna is granted.

Plaintiff's Supervisory Liability Claims Against O'Donnell and Bologna

Defendants argue that Plaintiff has adduced no facts to support a supervisory liability claim against Individual Defendants O'Donnell and Bologna. "The liability of a supervisor under section 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003). Plaintiff alleges that O'Donnell and Bologna failed to "remedy the wrong committed by their subordinates" and failed to "properly train, supervise, or discipline

their subordinates" (Am. Compl. ¶ 79), but proffers no evidence in connection with the instant motion practice to support her claims. Accordingly, because Plaintiff has produced no admissible evidence to support her theory of supervisory liability, Defendant's motion for summary judgment is granted as to these claims.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to count one of Plaintiff's Amended Complaint to the extent that it asserts false arrest, trespass, First Amendment retaliation, and abuse of process claims. Count one is also dismissed to the extent that it asserts a fabrication of evidence claim against Defendants Centeno-Talavera and Bologna. Count one survives to the extent that it asserts a fabrication of evidence claim against Defendant O'Donnell, and to the extent that the parties have not yet moved for, or the Court has not already denied, summary judgment on Plaintiff's First Amendment interference, unconstitutional search, conversion, and failure to intercede claims. Defendants' motion for summary judgment is also granted as to counts two and three of Plaintiff's Amended Complaint, which assert claims for supervisory liability against Defendants O'Donnell and Bologna, and claims for municipal liability against the City of New York, respectively.

Plaintiff's motion for summary judgment is denied in its entirety. By separate order entered today, the Court directs Plaintiff to show cause why her claim for First Amendment interference should not also be dismissed, and directs the parties to file a joint letter motion as to the status of any other claims that were not addressed in the parties' summary judgment motion practice within fourteen days.

The final pre-trial conference in this case is adjourned to June 22, 2018, at 10:30 a.m. The Court will renew the reference of this case to the Mediation program, and the parties

must promptly participate in a settlement conference. If no settlement is concluded, the parties must confer and make submissions in advance of the final pre-trial conference as provided in the Pre-Trial Scheduling Order. (Docket entry no. 17.) This Memorandum Opinion and Order resolves docket entry numbers 134 and 138.

SO ORDERED.

Dated: New York, New York
      March 29, 2018

                                      /s/ Laura Taylor Swain
                                      LAURA TAYLOR SWAIN
                                      United States District Judge